**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **JUSTIN KEITH HILL, #530-803,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:15-cv-0071** |
| | ) | |
| **HICKMAN COUNTY JAIL AND SOUTHERN HEALTH PARTNERS,** | ) | **Chief Judge Sharp** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Justin Hill, an inmate confined at the Humphreys County Jail in Waverly, Tennessee, has filed a civil rights complaint under 42 U.S.C. § 1983 against defendants the Hickman County Jail and Southern Health Partners. (ECF No. 1.) The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"). Upon conducting this review, for the reasons set forth herein, the Court finds that the complaint must be dismissed for failure to state a claim for which relief may be granted.

**I. Standard of Review**

Under the PLRA, the Court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In conducting the initial review, the Court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## II. Factual Allegations

The plaintiff, how housed at the Humphreys County Jail, brings claims related to his previous confinement at the Hickman County Jail in Centerville, Tennessee. His claims relate to the medical treatment he received (or did not receive) at the jail after a suicide attempt, sexual threats by another inmate, and allegedly inadequate jail accommodations.

### A. The Suicide Attempt

The plaintiff attempted suicide with a borrowed razor on the evening of October 12, 2014. After cutting himself, however, he became afraid and notified a guard. A mobile crisis unit was called and the plaintiff was outfitted in a paper gown and placed in a holding cell. A jail official bandaged his wound.

The plaintiff stayed in the holding cell on suicide watch for five days. During which time he was given two small Band-Aids and some gauze, at his request for a bandage change. He never saw a nurse or other medical professional for a physical- or mental-health assessment despite the wound, the plaintiff's long history of suicide attempts and hospitalizations, and his documented diagnoses of Borderline Personality Disorder and Bipolar Disorder.

During his time on suicide watch, the plaintiff was not permitted to shower, make phone calls, have access to writing paper, or leave the holding cell for recreation period or any other reason.[1] The plaintiff also alleges that the food he received during the five days was inadequate and that he was not provided dinner at all on one day. He overheard the guards saying derogatory things about him while he was in the holding cell; he was only provided a fresh paper gown every 24 or 48 hours; and he did not receive a sleeping bag until his third day in the holding cell. The plaintiff does not allege, however, that he

[1] He states he was transported to the Humphreys County Jail on one of those days, presumably for a court appearance.

suffered from cold or that he lost weight or suffered any detriment to his health as a result of his treatment while on suicide watch.

**B. Sexual Threats**

On a different occasion, the plaintiff received sexual threats from another inmate. The same inmate had been "touching [him] in appropriately" and against the plaintiff's will "for a while" before this occurred. The inmate told him he was going to get moved into the plaintiff's cell and force him to have sex with him. The plaintiff submitted a written complaint to the jail administrator, who responded: "Your sexual preference is of no concern to me unless it interferes with jail procedure. I suggest you keep it to yourself." (ECF No. 1, at 8.) Another officer explained to the plaintiff: "Well, his point is that if you weren't so openly gay, you wouldn't have those issues." (*Id.*) The plaintiff states that the other inmate was "NOT moved until 2 or 3 days later after he sent several harassing requests about getting moved into my cell." (*Id.*) This ambiguous statement does not indicate that the other inmate was moved into the plaintiff's cell, nor does the plaintiff suggest that he actually suffered a sexual assault by the other inmate that jail officials could have but failed to prevent.

**C. Conditions of Confinement**

In late February or early March, the plaintiff was moved from a bottom bunk to a top bunk and then to the floor, even though there were open bunks in other cells as well as portable bunks. The plaintiff kept asking why he was being forced to sleep on the floor when there were open bunks available and he had previously been in a cell for nine months. His complaints were ignored until he wrote a complaint threatening to sue for discrimination. After that, he was moved into a vacant cell, but the officer who told him he could move also "cussed him out" and threatened lockdown at the same time, because of his complaints. The plaintiff was not actually placed on lockdown.

The plaintiff further alleges that he and other inmates experienced threats by jail personnel, including Sgt. Christopher Jolley, Lt. Bragg, Capt. McNabb, and others. The officers would "get in [their] faces and try to instigate fights" with name-calling and saying things about the inmates' families. The plaintiff witnessed two incidents of unnecessary roughness/violence by jail officials, but he does not allege that he was subjected to unnecessary roughness or violence.

Based on all these allegations, the plaintiff seeks damages and injunctive relief against the Hickman County Jail and against Southern Health Partners as the entity that contracts with Hickman County to provide healthcare for jail inmates.

## III. Discussion

The Court presumes that the plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights, as well as possibly under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.*

### A. Prison Rape Elimination Act

Although the question has not been addressed by the Sixth Circuit, several district courts have found that the PREA "does not create a right of action that is privately enforceable by an individual civil litigant." *Porter v. Louisville Jefferson County Metro Gov't*, No. 3:13CV-923-H, 2014 WL 6883268, at *3 (W.D. Ky. Dec. 5, 2014) (quoting *LeMasters v. Fabian*, Civil No. 09702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009), and collecting cases).

> The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. 42 U.S.C. § 15601 et seq. The statute does not grant prisoners any specific rights. In the absence of "an 'unambiguous' intent to confer individual rights," such as a right to sue, courts will not imply such a right in a federal funding provision.

*Id.* (quoting *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002))).

This Court likewise concludes that the PREA creates no private right of action. To the extent the complaint might be construed as bringing a claim under the PREA, such claim must be dismissed.

### B. Section 1983

Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983. The plaintiff attempts to allege violations of the Eighth Amendment's prohibition against cruel and unusual

punishment based on (1) inadequate medical care; (2) jail officials' failure to protect him from sexual threats; and (3) inadequate conditions of confinement. He also complains that he was denied access to a telephone and writing material while on suicide watch, which implicates the First Amendment.

The first question, however, is whether the plaintiff alleges facts that show that the alleged violations were committed by defendants who are subject to liability under § 1983. He does not. The Hickman County Jail is a building, not a person or entity capable of acting under color of state law or susceptible to liability under § 1983. *See Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (county jail is a department of the county and not a legal entity susceptible to suit); *Travis v. Clinton Cnty. Jail*, No. 1:10-cv-1276, 2011 WL 447000, at *2 (W.D. Mich. Feb. 4, 2011) ("The jail is a building, not an entity capable of being sued in its own right."). On that basis alone, the claims against this defendant would fail.

And while Southern Health Partners, as the entity to which the obligation to provide medical care to individuals in state custody has been contractually delegated, may be deemed to act under color of state law for purposes of a claim under § 1983, *West v. Atkins*, 487 U.S. 42, 56 (1988), it cannot be liable solely on the basis that it employs a tortfeasor, because "*[r]espondeat superior* is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). Instead, a private entity cannot be held responsible for an alleged constitutional deprivation unless there is a direct causal link between a policy or custom of the entity and the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory. . . . [A] private contractor is liable for a policy or custom of that private contractor. . . ."). Simply stated, the plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).[2] In this case, the

[2] This is the law in the Sixth Circuit and every other circuit that has addressed the issue, but a panel of the Seventh Circuit has recently observed that the matter is deserving of "fresh consideration." *Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015). That court noted that the Supreme Court has never directly considered the question of whether *Monell* applies to private corporations, and that "there are substantial grounds to question the extension of the *Monell* holding for municipalities to private corporations." *Id.* at 790. Specifically, "[i]nsulating private corporations

plaintiff he does not allege the existence of an unconstitutional policy or custom adopted by Southern Health Partners that affected his medical care. The claims against this defendant are likewise untenable.

Dismissal of the complaint would be appropriate solely on the basis that the plaintiff fails to establish that the named defendants could be liable for the alleged constitutional violations. The Court finds that dismissal with leave to amend the complaint to name the appropriate defendants in this case would not be warranted, however, because the plaintiff's factual allegation also fail to establish a violation of his constitutional rights, as discussed below.

***A. Inadequate Medical Care***

To state a claim under 42 U.S.C. § 1983 based on constitutionally inadequate medical care, a plaintiff must allege facts which, if proven to be true, establish that prison officials were deliberately indifferent to the plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). For a claim to survive the initial review required by the PLRA, the plaintiff must, at a minimum, show that he suffers a sufficiently serious condition such that the denial of needed medical care would result in the unnecessary and wanton infliction of pain or pose a substantial risk of serious harm. *See Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013).

In this case, with regard to his *physical* health, the plaintiff asserts that his cut was bandaged and that he was provided additional Band-Aids. Although no medical professional inspected the wound during the five days the plaintiff stayed on suicide watch, the plaintiff does not allege that the wound was deep or serious, that it needed stitches, that it became infected, or that he suffered further damages of any kind as a result of not receiving additional medical attention. The Court therefore finds that medical need posed by the wound the plaintiff inflicted on himself with his cellmate's razor was not sufficiently serious to warrant Eighth Amendment protection.

It is unclear whether the plaintiff intends to state a claim based on lack of medical attention for his *mental* health following his suicide attempt. Under federal law, mental-health needs are undoubtedly medical needs for purposes of the deliberate-indifference analysis. *See Comstock v. McCrary*, 273 F.3d

---

from *respondeat superior* liability significantly reduces their incentives to control their employees' tortious behavior and to ensure respect for prisoners' rights. The results of the current legal approach are increased profits for the corporation and substandard services both for prisoners and the public." *Id.* at 794.

693, 702 (6th Cir. 2001) (citing *Yellow Horse v. Pennington Cty.*, 225 F.3d 923, 927 (8th Cir. 2000) (holding that prisoner "had a clearly established constitutional right to be protected from the known risks of suicide and to have his serious medical needs attended to"); and *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (noting that prison inmates have an Eighth Amendment right be free from deliberate indifference to serious psychiatric needs)). Moreover, suicidal ideology may undoubtedly be a serious condition. *Comstock*, 273 F.3d at 711 (affirming the denial of summary judgment to prison psychologist on the basis of evidence that he subjectively perceived and was deliberately indifferent to the risk that the prisoner might commit suicide). However, in this case, the plaintiff arguably received "treatment" for his potentially suicidal condition by being placed in a holding cell under observation. Beyond that, the plaintiff does not allege that he sought or requested mental-health treatment or, more to the point, that he suffered damages as a result of not being seen or treated by a mental-health professional during the five days that he was on suicide watch. The Court again finds that he has not alleged facts showing the existence of a sufficiently serious medical condition to state a claim under the Eighth Amendment.

In short, the plaintiff has not alleged that he suffered actual harm as a result of prison officials' failure to ensure that he received follow-up medical care during the five days immediately following his suicide attempt. The complaint fails to state a colorable claim against any defendant based on the deliberate indifference to the plaintiff's serious medical needs.

***2. Sexual Threats***

Under the Prison Litigation Reform Act,

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.

42 U.S.C. § 1997e(e). *See also Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1999) ("[A] claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities,' that is the touchstone of a conditions-of-confinement case" (quoting *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)))). Although the plaintiff here claims that he was threatened by another prisoner and that jail officials did not take his threats seriously, the Complaint omits any reference to an actual sexual assault or physical injury resulting from the prison officials' disregard of the reported threats.

The Court therefore finds that the complaint fails to state a colorable claim based on jail officials' alleged failure to protect the plaintiff from threats of harm by another inmate.

***3. Conditions of Confinement***

The plaintiff alleges that, while on suicide watch, he received inadequate food and skipped dinner on one occasion, was deprived of the ability to shower, and was only given a sleeping bag after a couple of days. He also alleges that he was forced to sleep on the floor for a period of time and that he was the target of derogatory language and name-calling by jail officials.

The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F. App'x 448, 454–55 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). Therefore, to establish an Eighth Amendment violation, a plaintiff must make an objective showing of the deprivation of "the minimal civilized measure of life's necessities." *Id.* at 454 (quoting *Rhodes*, 452 U.S. at 347); *see also Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834) ("[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."). He then must show that the defendant, subjectively, acted "wantonly," with "deliberate indifference to the plaintiff's serious needs." *Richmond*, 450 F. App'x at 455 (citing *Farmer*, 511 U.S. at 834).

Under this standard, verbal harassment and offensive comments by prison or jail officials, even if morally reprehensible, do not violate the Eighth Amendment or give rise to a cause of action under 42 U.S.C. § 1983, because they do not cause objectively serious harm. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) ("[H]arassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits." (citing *Ivey*, 832 F.2d at 854)). The plaintiff's allegations that he was subjected to verbal harassment by jail officials do not give rise to a claim under § 1983.

Prison officials are required to provide inmates with adequate food. For Eighth Amendment

purposes, adequate food is characterized as "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)) (footnote omitted). However, isolated deprivations of meals to prisoners do not rise to the level of an Eighth Amendment violation where the daily meal or meals provided are sufficient to maintain normal health. *See Cunningham v. Jones*, 667 F.2d 565 (6th Cir. 1982) (one meal per day for fifteen days consecutive days did not violate the Eighth Amendment where the one meal provided sufficient nutrition to sustain normal health for that time period); *Islam v. Jackson*, 782 F. Supp. 1111 (E.D. Va. 1992) (serving inmate a maggot-contaminated meal on one occasion and serving food under unsanitary conditions for thirteen days did not constitute cruel and unusual punishment). *See also White v. Gregory*, 1 F.3d 267 (4th Cir. 1993) (providing prisoners two meals a day on weekends and holidays, even though three meals were served during the week, did not rise to the level of an Eighth Amendment violation); *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) ("Even on a regular, permanent basis, two meals a day may be adequate [under the Eighth Amendment]."); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (a prisoner's "missing a mere one out of every nine meals [50 meals over five months] is hardly more than that missed by many working citizens over the same period. We are therefore doubtful that [the plaintiff] was denied anything close to a minimal measure of life's necessities.").

The plaintiff here alleges generally that the food he received while on suicide watch was insufficient and always cold and that he was not provided dinner the day he was transported to and from the Humphreys County Jail. The plaintiff does not allege that he lost weight, that his health suffered as a result of insufficient nutrients, or that he otherwise suffered any serious harm as a result of the inadequate food. The Court finds that the complaint fails to allege facts supporting an Eighth Amendment violation based on the provision on inadequate food over the period of five days that the plaintiff was held on suicide watch.

Finally, the plaintiff alleges that, while on suicide watch, he was only provided a new paper gown every 24 to 48 hours and was not allowed to shower. Once back with the general jail population, he was required to sleep on the floor for an unspecified but apparently short period of time. These allegations do not suggest that the plaintiff suffered "extreme" deprivations of the type that can be characterized as

punishment prohibited by the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). Nor has he shown that he suffered any actual physical injury resulting from these conditions. *See Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994) (noting that "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury"); 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). The physical injury need not be significant, but it must be more than *de minimis* for an Eighth Amendment claim to proceed. *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003). *Cf. Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986); *see also* *Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008) (forcing pretrial detainees to sleep on a floor mattress for three to seven months due to overcrowding is not a constitutional violation); *Grissom v. Davis*, 55 F. App'x 756, 758 (6th Cir.2003) (seven-day deprivation of a mattress and bedding did not violate the Eighth Amendment); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) (two-week deprivation of a mattress is not a constitutional violation).

***4. Alleged Violations of the First Amendment***

While access to the outside world via telephone and writing materials may, under certain circumstances, implicate a prisoner's rights under the First Amendment, *see Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (prisoners have right to "reasonable" access to telephone), the temporary deprivations of which the plaintiff complains under the circumstances presented and in light of the fact that he was on suicide watch, did not violate the First Amendment. *Cf. Almahdi v. Ashcroft*, 310 F. App'x 519 (3d Cir. 2009) (holding that prison's restriction of prisoner's telephone access to one phone call per month did not violate the First Amendment where the restriction was reasonably related to the prison's legitimate security concerns and the prisoner had already committed two telephone-related rule infractions). The plaintiff does not allege that his access to the courts was hampered or that he was prejudiced in any ongoing legal proceedings, and the short-term nature of the deprivations otherwise establishes that he did not suffer a violation of his constitutional rights.

## IV. CONCLUSION

For the reasons set forth herein, the complaint will be dismissed in its entirety for failure to state a claim for which relief may be granted. An appropriate order is filed herewith.

KEVIN H. SHARP
Chief Judge
United States District Court